[No. 3726. Dec. 14, 1931.]

STREIT v. LUJAN, State Comptroller, et al.

[6 P. (2d) 205.]

Charles Fahy, of Santa Fe, for appellant.

E. K. Neumann, Atty. Gen., Carl A. Hatch, of Clovis, and Sam G. Bratton, of Albuquerque, for appellees.

Rodey & Dailey, of Albuquerque, amici curiae.

## OPINION OF THE COURT

WATSON, J.

Laws 1931, c. 31, makes provision for the refunding of gasoline excise taxes upon proper showing that the gasoline had been purchased for use and used otherwise than in motor vehicles operated or intended to be operated upon the highways. The present suit challenges the constitutionality of that act and seeks to enjoin state officials from complying with its provisions. The trial court sustained a demurrer to the complaint and entered final judgment dismissing it. Plaintiff has appealed.

Appellant claims to be the owner of a state highway debenture with attached coupons. It is dated July 1, 1930; matures July 1, 1938; is in the principal sum of $1,000; bears interest at 5 per cent. payable semi-annually; specifies that it is payable only from the proceeds of the collection of the 5-cent excise taxes upon the use or sale of gasoline, the motor vehicle registration fees, and property taxes "to the extent to which it is now provided by law the proceeds of the collection of such fees and taxes shall be covered into the state road fund and as provided by the terms of" Laws 1929, c. 1, Special Session; recites that it is one of a series of 250, issued in conformity with the provisions of the act just mentioned, to anticipate the collection of the proceeds of the taxes just enumerated; and provides that:

"Pursuant to the provisions of said Act of the Legislature of New Mexico, the issue and sale of this debenture constitutes an irrevocable contract between the State and the owner thereof that said fees and taxes at the rate now provided by law shall not be reduced so long as this debenture remains outstanding and unpaid, and that the State will cause said fees and taxes to be promptly collected and sufficient thereof set aside and applied to pay this debenture and interest according to the terms thereof."

Laws 1929, c. 1, Special Session (1929 Comp. § 64-1101 et seq.), authorized the state highway commission to anticipate the proceeds of the collection of any or all of the revenues enumerated in the debenture "to the extent to which it is now provided by law that the proceeds of the collection of such fees and taxes shall be covered into the state road fund, and the same are not otherwise

pledged by the issuance and sale of bonds or debentures heretofore sold and now outstanding." Section 1 (*1929* Comp. § 64- 1101). Section 2 (1929 Comp. § 64-1102) provides:

"The treasurer of the state of New Mexico shall keep a correct record of all such debentures issued, and from the proceeds of the taxes or fees pledged to pay the same under the authority hereof, he shall first set aside each month in a separate fund, a sufficient sum to pay the interest accruing each month on said debentures, and during the twelve months next preceding the maturity of each series of such debentures he shall set aside from said proceeds sufficient money to provide for the payment of the principal thereof at maturity."

Section 5 (1929 Comp. § 64-1105) provides:

"The issue and sale of said debentures shall constitute an irrevocable contract between the state of New Mexico and the owner of any of said debentures, that the fees and taxes pledged for payment thereof, at the rate now provided by law shall not be reduced so long as any of said debentures remain outstanding and unpaid, and that the state will cause said taxes and fees to be promptly collected and sufficient thereof set aside and applied to pay said debentures and interest according to the terms thereof."

At the time of the adoption of this act, it was provided by law that all of the proceeds of the gasoline sales excise tax not necessary to pay the principal and interest of outstanding debentures "shall be paid into the state treasury and covered into the State Road Fund to be used for maintenance, construction and improvement of state highways and to meet the provisions of the Federal Aid Road Law." Laws 1927, c. 20, § 2, 1929 Comp. §60-205.

Appellant complains that, pursuant to the refunding act of 1931, a suspense fund has been set up, in which there is now more than $25,000, which is being withheld from the state road fund, although there are not now in the treasury, available for the purpose, sufficient funds to pay the debentures outstanding in the sum of $5,600,000; that the act complained of, if put into effect, will materially reduce the amount pledged for the repayment of the debentures, and materially reduces the value of plaintiff's debenture and of all others.

The constitutionality of the act is challenged on four grounds:

First. That it impairs the obligation of appellant's contract, in violation of U. S. Const. art. 1, § 10, and N. M. Const. art. 2, § 19.

Second. That it is in violation of N. M. Const. art. 9, § 16, providing that:

"The legislature shall not enact any law which will decrease the amount of the annual revenues pledged for the payment of state highway debentures or which will divert any of such revenues to any other purpose so long as any of the said debentures issued to anticipate the collection thereof remain unpaid."

Third. That it is violative of N. M. Const. art. 4, § 30, providing:

"Except interest or other payments on the public debt, money shall be paid out of the treasury only upon appropriations made by the legislature. No money shall be paid therefrom except upon warrant drawn by the proper officer. Every law making an appropriation shall distinctly specify the sum appropriated and the object to which it is to be applied."

Fourth. That in so far as immediate effect is claimed for the act, it is violative of N. M. Const. art. 4, § 23, since, although the emergency clause appears in the enrolled and engrossed bill as signed by the presiding officers of the two Houses, approved by the Governor, and on file in the office of the Secretary of State, the bill was not in fact passed by a two-thirds vote of each House.

██ No one here questions that appellant and his co-debenture holders are in a contract relation with the state. No one contends that there could be any validity to a subsequent act impairing the obligations of such contract. What is the contract, and what are its obligations?

Undoubtedly the moneys proposed to be used in making refunds are such as were to be covered into the state road fund. Undoubtedly it is proposed to withhold them from that fund and to use them for a purpose other than payment of the principal or interest of the debentures. But we do not think it necessarily follows that this will impair the obligations assumed by the state towards these debenture holders.

The highway commission was authorized to anticipate the proceeds of any or all of these revenues. But the

nature of the pledge was clearly indicated. The state's specific obligation is expressed in section 2, as above quoted. Applying it to appellant's contract, it is: That the treasurer shall each month set aside some $4 as the interest accruing, and during the twelve months preceding July 1, 1938, set aside $1,000 to pay the principal. It cannot be doubted that, after compliance with this obligation, any surplus was to be covered into the state road fund, and was to be there available for expenditure by the highway commission. It cannot be supposed, nor can the purchaser of the debentures have supposed, that the highway commission was charged with any duty to conserve the moneys in the state road fund for the payment of interest or retirement of the debentures.

As we construe the statute and the debenture, together constituting the contract, the whole of these revenues was pledged only to the extent of enabling the state to meet its particular obligation to meet the statutory provision for the debentures and their interest. Any revenues not needed for such purpose were released from the pledge and subject to be disposed of according to the legislative will.

Appellant has not alleged that there has been any failure on the part of the state to comply with its particular obligation; has not alleged that anything more than this is necessary to his security; nor alleged that the expenditure of surplus endangers his security. His complaint is therefore fatally defective.

The obligation of the state to make the provision it agreed to make for retirement of the debentures will be strictly enforced by the courts if any other branch of the government should overlook or seek to override it. It is not to be presumed that the Legislature, in passing the act, or that state officials in proceeding under it, have failed or will fail to appreciate that it must operate upon these revenues in strict subordination at all times to the prior rights of the debenture holders. The statute so construed impairs no contract.

 Appellant contends that it impairs his contract in another way; that the refunding of a part of these

excises is equivalent to reducing them, and that it is thus in violation of the express provision of the debenture and of the act that the fees and taxes pledged, at the rate provided, shall not be reduced.

In some situations it might be proper or necessary to admit the equivalence of the two. But, the question now being the impairment of the obligations of appellant's contract, the two things are vastly different. Had the state reduced the rate of the excises or granted exemptions, it would have impaired irrevocably the fund, to the whole of which the debenture holders may look, if necessary, for their satisfaction. The Legislature has not done this. It has maintained the fund; merely employing surpluses, when there are any, for its own aims. Now it is using them to make refunds. The next Legislature may direct their use for some other purpose. So long as they are surpluses, it is quite immaterial to appellant how they are employed.

In view of what we have said, it is scarcely necessary to notice N. M. Const. art. 9, § 16. We find here a mere restatement of the arguments already presented. The constitutional limitation here relied upon might almost be said to be supererogation; merely to state expressly what would have been the law otherwise. In the absence of this provision, the Legislature, having once pledged revenues, could not divert, abolish or reduce them until the pledge had been redeemed. It is sufficient again to say that there has been no such pledge of the revenues as a whole as precludes employing them in strict subordination to the obligations assumed to the debenture holders.

█ █ The third of the grounds of attack above stated we have pursued far enough to find that it presents a question not without difficulty. Before reaching any conclusion we became impressed that it is not properly before us. Having determined that the act as here construed does not violate or prejudice any property or personal right of appellant, we fail to see what interest he can have to qualify him as a suitor to enjoin the operation of the act on this ground.

We have heard appellant to urge those constitutional provisions made for his benefit and protection. The provision now in question is not of that kind. Suppose the act to be unconstitutional on this ground, and that under it there is threatened a devastavit of state revenues. It will not injure appellant in his capacity as a debenture holder. He does not claim to be a taxpayer. If he did, it would not qualify him as a suitor for the injunction he seeks. Asplund v. Hannett, 31 N. M. 641, 249 P. 1074, 58 A. L. R. 573.

"It is not the duty of this or any other court to sit in judgment upon the action of the legislative branch of the government, except when the question is presented by a litigant claiming to be adversely affected by the legislative act on the particular ground complained of."

Asplund v. Alarid, 29 N. M. 129, 219 P. 786, 790.

The question here presented is one publici juris. In it appellant has no special concern and no legal interest. If in this case he had shown, or in some other case shall show, an impairment of contract obligations, he will be protected for that reason; not because the Legislature failed to observe some constitutional requirement in making an appropriation it had a right to make. Not having shown any such impairment, his situation is the same as that of the general public.

What we have just said is equally applicable to the fourth and last of the above-stated contentions.

It follows that the judgment should be affirmed, and the cause remanded. It is so ordered.

BICKLEY, C. J., and PARKER, SADLER, and HUDSPETH, JJ., concur.